Barbara Allen et al., Respondents, v Canadian General
Electric Company Limited, Appellant.

Third Department, December 7, 1978

APPEARANCES OF COUNSEL

*Maynard, O'Connor & Smith (Richard M. Gershon* of counsel), for appellant.

*McGivern, Shaw & O'Connor (Gary J. O'Connor* of counsel), for respondents.

## OPINION OF THE COURT

HERLIHY, J.

The defendant is a Canadian corporation which allegedly manufactured and sold an electric tea kettle to the plaintiffs. The tea kettle was allegedly defective and caused injuries to plaintiff, Barbara Allen. The plaintiffs' complaint noted that the defendant was not authorized to do business in New York and, as a basis for New York jurisdiction over the defendant for the injuries to Barbara Allen, it alleged that:

"A. The Defendant is a subsidiary corporation of the General Electric Company, a New York corporation, and, by virtue of its relationship to the parent corporation, can be seen to be doing business in the traditional sense within the State of New York, or alternatively,

"B. As will be detailed herein, the Defendant committed a tortious act without the State of New York which caused personal injury within the State of New York·and the Defendant regularly does business within the State of New York and derives substantial revenue from goods used within the State of New York."

The defendant moved to dismiss the complaint upon the ground that there was a lack of jurisdiction (CPLR 3211, subd [a], par 8). Special Term found that the record did not establish that the defendant had a substantial presence in New York by doing business in New York and/or by identity with its parent corporation (CPLR 301). However, Special Term found that there was jurisdiction pursuant to CPLR 302 (subd [a], par 3, cl [i]), hereinafter referred to as CPLR 302.

CPLR 302 provides, in part, that when an injury to persons is committed inside New York, a foreign corporation can be subjected to personal jurisdiction here if it "regularly does or solicits business * * * or derives substantial revenue from goods used or consumed * * * in the state". Of course, this is substantially what the plaintiffs, by paraphrasing, alleged in part in subparagraph "B", quoted above. Since Special Term found that there was a failure to show that the defendant was

regularly doing business in New York, jurisdiction on that basis was precluded under CPLR 302 as well as CPLR 301.

The dispositive issue at Special Term and again upon this appeal is whether or not the evidence upon the motion shows that the defendant derived substantial income from goods used or consumed in New York.

The defendant in its motion papers referred to itself as "CGE" and stated or conceded as follows: "7. Only a small portion of CGE's total sales of goods and services are made to customers in New York State (for example, in 1976 this was less than 1% of total CGE sales) and of these sales to customers in New York only a negligible portion are home appliances. All such customers are business purchasers, and often, a portion of the goods sold to customers in New York State would be resold by them outside New York State." The plaintiffs in opposition to the motion alleged that the defendant's total sales in 1976 were $879 million and based upon the above-quoted concession of 1% being made in New York State, this would mean sales of $8.79 million in New York.

The defendant submitted a reply affidavit which did not dispute the plaintiffs' contention that New York sales for 1976 came to about $8.79 million. Further, that sum of money is not disputed upon this appeal by defendant. Special Term found that such a sum of money constitutes "substantial revenue" within the meaning of CPLR 302 upon its face. The defendant contends that since upon comparison with its total sales the sum of $8.79 million is only 1% thereof, it is not "substantial revenue" as to it.

In the case of *Allen v Auto Specialties Mfg. Co.* (45 AD2d 331, 333), this court held that the phrase "substantial revenue" as used in CPLR 302 (subd [a], par 3, cl [ii]) "should be construed to require comparison between a defendant's gross sales revenue from interstate or international business with total gross sales revenue". There is no substantial difference between clause (i) and clause (ii) of CPLR 302 (subd [a], par 3) as to the use of the words "substantial revenue" and under principles of *stare decisis* the defendant argues that a mere 1% of total gross revenue is not "substantial". Support for the comparison theory is found in the Practice Commentary by Joseph M. McLaughlin under CPLR 302 (McKinney's Cons Laws of NY, Book 7B, CPLR 302, p 90).

The importance of New York revenues to the total revenues of a business not actually doing business in New York State is

certainly measurable by the percentage method as adopted in the *Allen* case. However, ordinarily it would not be expected that a small percentage of 1% or 2% would equal large amounts of money. (See, e.g., *Kramer v Vogl,* 17 NY2d 27, 32.) Significantly, the defendant, upon this appeal, although relying upon the *Allen* case, did *not* offer, at Special Term, any comparison of its profits and the New York sales or any analysis of the effect of nearly $9 million in New York sales on its revenue stability. The court in *Allen* specifically noted that profits were relevant to the issue of "substantial revenue".

In *Chunky Corp. v Blumenthal Bros. Chocolate Co.* (299 F Supp 110, 115), it was stated that one of the issues raised was "whether or not a firm with no permanent employees in New York and no other establishment in the state can, by virtue of the fact that about 4% of its revenue is derived from New York sources, be said to do or solicit business on a regular basis, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed in New York".

Of course, the basis for doing business there was different than in the present action, but it is significant to note what the court said (p 115): "The New York statute has received little construction thus far as to the standard to be applied. The practice commentary with respect to § 302 suggests that if a firm derived 10% of its revenue from New York it would be subject to personal jurisdiction under this subsection 7B McKinney's Consol. Laws of New York Ann. 1968-1969, Pocket Part at 111. Absent any clear authoritative guidance, we are forced to anticipate how New York's highest court would construe the statute. *Since each case must be decided on its own facts,* it is difficult to establish in percentage terms the lower limit of this standard." (Emphasis supplied.)

Whether a "quantitative" or "qualitative" approach is used, the sum of $8.79 million is too large to be considered insubstantial without further analysis or proof of the business which would show such fact. While it is not large by comparison to the sum of $879 million, it would seem obvious that General Electric Company, as the owner of 91.9% of the outstanding shares of the defendant, would consider the loss of almost $9 million as substantial if such dollars represented profits.

Upon the present record, the defendant, as movant, has

failed to establish that the sum of $8.79 million is not substantial revenue to it, either as a gross amount or as a percentage of its gross income. The sum of money involved is prima facie "substantial" and demonstrates a sufficient contact with this State to support jurisdiction *(Gillmore v Inskip, Inc.,* 54 Misc 2d 218). The mere showing by defendant upon this motion that the percentage of New York revenue is small in comparison to total income is insufficient evidence to support a dismissal of the complaint.

It would be difficult to convince an economist that sales of approximately $9 million were not substantial regardless of their ratio to total sales. To *limit* the issue of jurisdiction in all cases to a comparison of the ratio of sales in individual States to total sales would, in all probability, insulate a large corporation, such as defendant, from possible liability in most individual States of the union. Such should not be the rule or judicial interpretation based on the present record.

Just because a corporation is large, and $8 and $9 million of sales represents only a small percentage of its business, does not mean that it should escape jurisdiction. To hold that the court has jurisdiction "does not offend 'traditional notions of fair play and substantial justice'" *(International Shoe Co. v Washington,* 326 US 310, 316).

Since the defendant has not established that it does not receive substantial revenue from the State of New York, Special Term's refusal to dismiss the complaint must be affirmed and we do not reach or consider any other basis for jurisdiction upon this appeal.

The order should be affirmed, with costs.

MAHONEY, P. J., SWEENEY, KANE and LARKIN, JJ., concur.

Order affirmed, with costs.