HOES OF AMERICA, INC., an Illinois Corporation, Plaintiff,

v.

Klaus-Gerd HOES doing business as Maschinenfabrik Klaus-Gerd Hoes, Defendant.

No. 78–1255.

United States District Court, C. D. Illinois, Springfield Division.

Sept. 17, 1979.

John C. Mulgrew, Jr., William R. Kohlase, Davis & Morgan, Peoria, Ill., for plaintiff.

Carl M. Webber, Webber & Thies, P.C., Urbana, Ill., Paul Brown, Lyle W. Allen, Heyl, Royster, Voelker & Allen, Springfield, Ill., for defendant.

## ORDER

J. WALDO ACKERMAN, District Judge.

Plaintiff, Hoes of America, Inc., (hereafter American Hoes), an Illinois corporation, has filed a five-count complaint against Klaus-Gerd Hoes, a citizen of West Germany. Klaus-Gerd Hoes is the owner of, and does business as, Maschinenfabrik Klaus-Gerd Hoes (hereafter referred to as German Hoes) which manufactures drainage machinery, equipment and spare parts and distributes and sells them on a worldwide basis. In 1970 German Hoes entered into a contract with Mr. Eli D. Herschberger to make him their exclusive distributor for the United States, Canada and Mexico. This distribution was undertaken by American Hoes, of which Mr. Herschberger is President, Director and majority stockholder.

Plaintiff alleges that German Hoes, along with various co-conspirators, has committed a number of acts in Illinois which has injured or destroyed plaintiff's business, interferred with and induced a breach of the contract between American Hoes and German Hoes, interfered with the relationship between American Hoes and its dealers, interfered with American Hoes expectancy of substantial future sales, and violated certain provisions of Illinois statutes, particularly Ill.Rev.Stat. ch. 121½, § 262. For these injuries, plaintiff claims $2,500,000 actual and $1,000,000 exemplary damages on each of the five counts. Jurisdiction is premised on 28 U.S.C. § 1332(a)(2), with venue under 28 U.S.C. § 1391(d).

Presently before this Court is a motion by German Hoes under Fed.R.Civ.P. 12 to decline jurisdiction, to dismiss, or in the alternative to stay the proceedings. The primary thrust of this motion centers around two provisions in the contract between Mr. Herschberger and German Hoes. The first provision states: "This contract is subject to German legislation." The second provision states: "Any court procedures shall be held in Bremen." The initial question posed is whether these contract provisions make Germany the exclusive forum for the present litigation. If so, an analysis is required as to whether it violates public policy to enforce the clause and require the Illinois plaintiff to bring its action in Germany.

■ Several preliminary issues require disposition. First, this Court has concluded that the 1970 contract is binding upon American Hoes. The present record indicates sufficient identity to Eli Herschberger and American Hoes to bind plaintiff to the contract terms. This relationship is further demonstrated by the course of business dealings by the parties and the letter of December 12, 1976, in which Eli Herschberger agreed that he, Eli D. Herschberger, Inc., and Hoes of America, Inc., would be jointly and severally liable for indebtedness to German Hoes.

■ Secondly, it is my opinion that the critical choice of law and choice of forum provisions in this case are contained in the 1970 contract and not in the boiler-plate General Conditions of Sale and Delivery which appeared on each invoice upon which goods were shipped to plaintiff by the defendant. Appearing on those invoices was the general condition: "The law exclusively applicable is that of the Federal Republic of Germany. For both parties the place of performance and the forum for litigation shall be Oldenburg [Germany]." Since the instant case does not deal with a particular transaction under an invoice, the above condition is not deemed to be directly controlling.

Now turning to the critical issues in this case, it appears that plaintiff and defendant agree that German law is to be applied in construing the choice of forum provision. The problem for the parties and this Court has been to determine whether a German Court would find that based on the wording of the choice of forum clause contained in the 1970 contract, Germany would be the exclusive forum for trial of the allegations posed in plaintiff's complaint. Each side has obtained an expert who has aided the Court with detailed statements regarding the German law on choice of forum provisions. Their conclusions are based upon an examination of German legislation and case law. Unfortunately, while both of the experts feel the law is clear, they have come to diametrically opposite conclusions. I

have analyzed the materials provided, including the affidavits of the experts and the excerpts of translated German statutes and court opinions. It is difficult to decide an interpretation of the law of a foreign country in which the legal system is different (i. e., civil law as opposed to common law). Even with a complete understanding of the system, there would still be problems such as obtaining of resource materials for legal research and inability to read the language of the original source materials. Due to these limitations, I must heavily depend upon the parties and have done so.

■ I have concluded that a German Court would construe the choice of law forum in the 1970 contract to give German courts exclusive jurisdiction over the plaintiff's claims of unfair competition and related torts. The clause itself is not ambiguous: "Any court procedures shall be held in Bremen." This provision was clearly the result of bargaining between the contracting parties. During the course of negotiations in Germany, Herschberger prepared a draft contract in which the choice of law was Illinois and disputes were to be handled under international arbitration under the rules of the International Chamber of Commerce. After subsequent negotiation, the German choice of law and German choice of forum clauses were finally agreed upon.

It is uncontradicted that Klaus-Gerd Hoes considered the forum provision as well as the choice of law provision to be essential and would not have entered the contract unless Herschberger agreed to those terms. The reason for Klaus-Gerd Hoes' insistence was that due to the multi-national nature of German Hoes, the corporation, absent contractual forum and law provisions, could be forced to appear in many different nations, each with different legal procedures and different substantive law. In view of this objective, it is difficult to imagine how the parties could have agreed to more all-encompassing choice of law and forum clauses. It is not reasonable to expect the parties to have set forth a detailed list of all

circumstances which might lead to "court procedures."

Having concluded that the contracting parties bargained for and intended to agree to the all-encompassing choice of law and choice of forum provisions, I am similarly convinced that German courts and legislation would allow the parties to do so, even as to business torts arising out of the relationship between the parties. This detailed analysis is set forth at length in the briefs of German Hoes, with the contrary position ably stated by American Hoes, and the German legislation and cases will not be repeated in this opinion.

■ The next critical issue becomes whether this Court must enforce the choice of forum agreement of the contracting parties or whether there are any circumstances or public policy reasons which compel this Court to deny enforcement. Historically, choice of forum clauses were looked upon with disfavor by American courts as an attempt to "ouster jurisdiction." *See* Annot., 56° A.L.R.2d 300. However, factors such as present-day commercial realities and expanding international trade have led the United States Supreme Court to the conclusion that a forum clause should control absent a strong showing that it be set aside. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (hereafter *Zapata*).

This Court finds that *Zapata* is analogous to the instant case and sets forth the applicable tests. A close reading of the Court of Appeals decisions giving rise to *Zapata* shows a background for the depth and breadth of the problem faced by the Supreme Court. A close reading of Judge Wisdom's dissent in *In Re Unterweser Reederei, GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), and his dissent along with five other justices from the rehearing en banc of *In Re Unterweser Reederei, GMBH*, 446 F.2d 907 (5th Cir. 1971), along with the majority opinion by the Supreme Court in *Zapata*, convinces me that the rationale of *Zapata* extends beyond admiralty and extends to

civil actions in contract and tort as well. *See e. g., Republic Int'l Corp. v. AMCO Engineers, Inc.*, 516 F.2d 161, 168 (9th Cir. 1975).

■ The forum clause must be specifically enforced unless American Hoes can clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. *Zapata*, 407 U.S. at 15, 92 S.Ct. at 1916. *See also*, Judge Wisdom's dissent in *In Re Unterweser Reederei, GMBH*, 428 F.2d at 905–06. This approach rejected the application of the traditional *forum non conveniens* doctrine under which unless the balance is strongly shown by the defendant to be in his favor, the plaintiff's choice of forum should rarely be disturbed.

*Zapata* lays to rest many of the considerations upon which American courts had refused to honor choice of forum clauses. The Court found that the forum-selection clause did not defeat or "ouster" the American court's jurisdiction, but rather "[t]he threshold question is whether that Court should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause." *Zapata*, 407 U.S. at 12, 92 S.Ct. at 1914.

The Court also found that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Zapata*, 407 U.S. at 15, 92 S.Ct. at 1916. *See also*, Judge Wisdom's dissent in *In Re Unterweser Reederei, GMBH*, 428 F.2d at 907–09. In *Zapata* the Court found the choice of forum clause enforceable even though the English court would enforce an exculpatory clause which would have been void, as against public policy, in an American court. As stated by Judge Wisdom, 428 F.2d at 906: "In cases of bankruptcy, divorce, successions, real rights and regulation of public authorities, for example, courts cannot re-

mit the dispute to a foreign forum lest a foreign court render a decree conflicting with our ordering of these affairs. And in cases where objectionable activity within our jurisdiction would be encouraged by the foreign court's decree, we would reach a similar result."

Furthermore, *Zapata* spoke to the suggestion that a forum clause, even though it be freely bargained for and contravenes no important public policy of the forum, may nevertheless be "unreasonable" and unenforceable if the chosen forum is seriously inconvenient for the trial. In *Zapata*, the Court held that where, as here, any inconvenience a party such as American Hoes would suffer by being forced to litigate in the contractual forum was clearly foreseeable at the time of the contracting:

> In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. *Zapata*, 407 U.S. at 18, 92 S.Ct. at 1917.

As pointed out by Judge Wisdom's dissent, 428 F.2d at 906: "A court may postpone declining jurisdiction until it is sure the foreign court will hear the dispute and provide a remedy."

Applying the *Zapata* test and approaches to the facts of this case, the Court concludes that plaintiff has not clearly shown that enforcement would be unreasonable and unjust. Plaintiff has at no time contended that the contract provisions were invalid for such reasons as fraud or overreaching.

American Hoes has claimed that enforcement would be unreasonable and unjust for several different reasons. First, it is claimed that to enforce the choice of forum provisions would violate the public policy of Illinois, the forum state in which this federal court sits by diversity jurisdiction. The question, in this context, is whether requiring these parties to litigate these disputes in Germany would somehow encourage the commission of intentional business torts in Illinois by foreign corporations. It appears, however, that Germany, like Illinois, deplores the types of conduct between businessmen that is alleged in American Hoes' complaint. It has not been shown that by the successful inclusion of choice of forum clauses in its contracts, German Hoes would be able to or attempt to, commit intentional torts against foreign companies and be exonerated in a "local" forum.

■ The real thrust of American Hoes' objections regards trial in Germany in that (1) there is no right to jury trial; (2) there is limited opportunity for discovery which is deemed essential in these business tort allegations; and (3) there is no right to punitive damages. In my opinion the German law was well settled on all of these points at the time of contracting, and this Court must hold American Hoes to the high standard set forth in *Zapata* that the choice of forum clause is enforceable unless trial "will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Zapata*, 407 U.S. at 18, 92 S.Ct. at 1917.

■ *Zapata* holds that parties can waive important substantive and procedural rights. Thus, plaintiff could, and did in my opinion, accept trial without a jury and no punitive damages. On the other hand, plaintiff cannot waive his right to some type of full and fair hearing on his claims. There is a question whether, given the limited discovery tools available in Germany, plaintiff can adequately prepare a case on the difficult business tort theories advanced. I have read and considered the several opinions in *Copperweld Steel Co. v. Demay-Mannesmann-Boehler*, 54 F.R.D. 539 (W.D.Pa.1972), 347 F.Supp. 53 (W.D.Pa. 1972), 354 F.Supp. 571 (W.D.Pa.1972); affirmed at 578 F.2d 953 (3rd Cir. 1978); in which the Court, in a post-*Zapata* case, refused to enforce the choice of forum clause as unreasonable. The reasons are summarized in footnote 18 of the Court of Appeals decision, 578 F.2d at 965, fn. 18.

Considering all of the policy considerations in *Zapata*, I am not able to find enforcement of the choice of forum provision unjust or unreasonable at this time. However, rather than dismiss this suit, I will grant German Hoes' alternative request to stay these proceedings until such time as it can be established that Germany will hear the suit and provide a remedy. American Hoes is being required to do nothing that they did not agree to do by contract. As stated in *Zapata*:

> The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts. . . . We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts. *Zapata*, 407 U.S. at 9, 92 S.Ct. at 1912.

If, after honoring its contractual obligations, American Hoes can show this court that it is practically impossible to receive a fair trial under the German judicial system, this Court will reconsider this order staying the case.

Counsel for both sides have demonstrated excellent legal research and arguments herein. Upon proper motion, this Court will certify that this issue is properly one suitable for appeal.