John and Catherine
VECCHIO, Plaintiffs,

v.

S & T MANUFACTURING
CO., Defendant.

No. 83 CV 1015.

United States District Court,
E.D. New York.

Nov. 26, 1984.

Bauman, Greene & Kunkis, P.C. by Bert Bauman, New York City, for plaintiffs.

Bower & Gardner, by Thomas J. Wacht, Jason M. Poliner, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant, an Oklahoma corporation, moves to dismiss this tort suit against it for lack of personal jurisdiction. Plaintiffs, as residents of New York, evoke the Court's diversity jurisdiction over the defendant under New York's long arm statute. N.Y. CPLR section 302(a)(3)(ii) (McKinney 1972). For the reasons set forth below, the Court finds that it may not properly rule on the motion at this time and orders that a hearing be held to produce further evidence as specified in this opinion.[1]

### Background

The plaintiff, Mr. Vecchio, an employee of American Airlines, claims that on April 26, 1982, he was injured while using an airplane engine workstand at J.F.K. Airport in New York. He also claims that his injuries occurred through no negligence on his part, but rather were a direct result of the defendant, S & T Manufacturing Company's, [hereinafter referred to as "S & T"] negligent construction of the engine workstand it had sold to American Airlines. Finally, plaintiffs claim that S & T which made the workstand in Oklahoma, knew or had reason to know that the two workstands it made on order for American Airlines, were to be used by the airline in its hangers at either or both J.F.K. and LaGuardia Airports in New York.

■ Defendant S & T claims to have had no prior contacts with New York and asserts that it is strictly a small local concern, consisting of two shareholders and five employees.[2] S & T does admit to having manufactured in Oklahoma three engine workstands for American Airlines, two of which it knew were ordered for use in New York. But, S & T insists that all its dealings with American Airlines took place within Oklahoma and that consequently, it has no way of knowing whether the stands it produced ever arrived in New York. In support of its argument S & T states that American Airlines' engineering division in Oklahoma provided the design specifications for the workstand and that both delivery of the final products and payment took place there as well. Even assuming that its workstands did arrive in New York, S & T asserts that the total cost of the workstands, $7,400 or 1.304% of its total business in 1982, falls below the "substantial revenue" requirement for New York's long arm jurisdiction.

### Discussion

In order for the Court to exercise its jurisdiction over S & T, it must determine

1. In its decision on this motion, the Court was mindful of the fact that this motion could be potentially dispositive of the entire case,—at least as it stands before this court. American Airlines, the employer of the allegedly injured plaintiff, has been impleaded in this case by a prior defendant, Bil Jax Inc. Bil Jax was originally thought to have manufactured the engine workstand at issue in this case. Only after discovery had commenced against Bil Jax, did plaintiffs learn that S & T Manufacturing Company was the suspected manufacturer and not Bil Jax. Consequently, this Court dismissed Bil Jax as a party in this suit and plaintiffs served their complaint on the present defendant.

2. Defendant claims it is not licensed, nor authorized to do business, nor incorporated in any other state but Oklahoma. Moreover, defendant, S & T, denies, *inter alia,* that it has ever had any agents, offices, bank accounts, financial holdings, sales representatives, subsidiaries, or divisions in New York; it further denies having ever advertised or solicited business in New York. These factors are relevant, however, only if the plaintiffs had tried to assert jurisdiction under N.Y. CPLR section 302(a)(1) non-domiciliary that "transacts any business within the state", or under 302(a)(3)(i) which gives the court jurisdiction over a non-domiciliary that "regularly does or solicits business, or engages in any other persistant course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." As plaintiffs ask that jurisdiction be asserted under N.Y. CPLR section 302(a)(3)(ii), these other sections cited above and factors relevant to their requirements do not concern us here.

whether New York's CPLR section 302(a)(3)(ii) can be properly applied in this case. This statute provides for jurisdiction over a non-domiciliary where he personally or through an agent "commits a tortious act without the state causing injury to person or property within the state, ... if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

█ Turning to the first requirement that the defendant expected or should have expected its actions to have consequences within New York, both the due process requirement and the somewhat narrower statutory requirement for personal jurisdiction are satisfied in the present case. In contrast to the defendant in *World Wide Volkswagen*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), S & T did not merely introduce its product into the stream of commerce; S & T sold its products with full notice that these products were ordered for use in New York. Under the CPLR, a court must find that "the presence of defendant's product in New York with some potential consequences was reasonably foreseeable rather than fortuitous". *Tracy v. Paragon Contact Lens Labs.*, 44 A.D.2d 455, 355 N.Y.S.2d 650, 653 (3d Dep't 1974). Thus, as noted above, the fact that defendants entered a purchase agreement in which two of the three workstands it produced were earmarked for use in New York, weighs in favor of finding that the products' presence here was reasonably foreseeable.

Turning to the second requirement, the derivation of "substantial revenue" from interstate or international commerce, New York courts construing this term have provided only a few guidelines; beyond these, the courts have rested their decisions on each case's particular facts. The general approach has been to determine "substantial revenue" from a "comparison between a defendant's gross sales revenue, and between a defendant's net profit from interstate or international business with total net profit. (cites omitted)." *Allen v. Auto*

*Specialities Mfg. Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3rd Dep't 1974). New York courts have also ruled that "the collateral activities relative to revenue need not occur in New York so long as they are interstate and substantial." *Id.* Additionally, it has been held that there need be no connection between the tortious act and the derivation of substantial revenue. *Gonzales v. Harris Calorific Co.*, 64 Misc.2d 287, 315 N.Y.S.2d 51 (Sup.Ct.), *aff'd*, 35 A.D.2d 720, 315 N.Y.S.2d 815 (2d Dep't. 1970).

Examples of cases holding that certain revenue is "substantial" vary as to whether the amount is described in terms of percentages or a numerical figure. For example, in *Allen v. Canadian General Electric Co., Ltd.*, New York sales of $8.79 million were to be prima facie evidence of substantial revenue even though it amounted to only 1% of the defendant's gross sales. 65 A.D.2d 39, 410 N.Y.S.2d 707 (3rd Dep't 1978). In that case, the court reasoned that income could be substantial enough to support long arm jurisdiction either if the amount was large in an absolute sense, that is, a large sum of money, or if the amount was large in a relative sense, that is, a large percentage of gross revenue. *Id.* at 702.

In terms of what percentage of gross revenue derived from New York alone by an out of state corporation is sufficient for long arm jurisdiction, the courts have ruled different ways. On the one hand, the case of *Tonns v. Spiegel's and Pro-Tec, Inc.* holds that a Washington corporation deriving only 4% of its revenues from New York could be subject to personal jurisdiction in a negligence action involving an allegedly defective product that the company had knowingly shipped to New York. 90 A.D.2d 548, 455 N.Y.S.2d 125 (2d Dep't 1982). *See also Darienzo v. Wise Shoe Stores, Inc.*, 74 A.D.2d 342, 427 N.Y.S.2d 831 (2d Dep't 1980) (approximately 5% of the defendant foreign corporation's products reached New York each year over an averaged eight year period). On the other hand, an earlier case, *Chunky Corp. v.*

*Blumenthal Bros. Chocolate Corp.*, holds that a foreign corporation deriving 4% of its total sales from New York customers, but having no continuous activities in New York, should not be subject to personal jurisdiction here. 299 F.Supp. 110 (S.D.N.Y.1969). Notably, in that case, the Court emphasized the difficulty of establishing a lower limit for the substantial revenue requirement. *Id.* at 115.

In any case, despite the variances in the rulings discussed above, it should be kept in mind that how much revenue a foreign corporation derives from New York alone, whether in percentage or monetary terms, has only been used as a guideline by courts: the statutory language and test requires that this Court look to whether the foreign corporation "derives substantial revenue from *interstate* and *international* commerce." N.Y. CPLR section 302(a)(3)(ii) (emphasis added).

While defendant correctly asserts that one of the statute's purposes is to exclude non-domiciliary businesses of a local nature, defendant has failed to present sufficient evidence to show that it is such a business. The only figure presented to the Court is defendant's assertion that the total dollar value of the two workstands in New York was $7,400 and that that figure was only 1.304% of defendant's total 1982 revenues. The Court here finds that this $7,400 figure alone is not so large that it would constitute prima facie evidence to satisfy the substantial revenue requirement. *Cf. Allen v. Auto Specialties Mfg. Co.*, 357 N.Y.S.2d at 550. But, because the record does not reveal the amount of defendant's total revenue derived from interstate and international business, that is, the revenue derived beyond those from the two New York workstands, the Court does not believe it may properly rule on the motion at this time without further evidence.

3. The Federal Rules of Civil Procedure Rule 43(e) reads as follows:
> *Evidence on Motions.* When a motion is based on facts not appearing of record the court may hear the matter on affidavits

Under Rule 43(e) of the Federal Rules of Civil Procedure,[3] the Court may and hereby does direct that the defendant produce for a deposition at this Court for the plaintiff an officer or employee of S & T having knowledge of the facts to testify with all pertinent supporting books and records as to the gross sales revenue and net profits derived from interstate or international commerce and total business during the fiscal or calendar year encompassing April 26, 1982; the cost of the hearing to abide the outcome of the motion.

SO ORDERED.

presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition.

28 U.S.C. (1984)