**RONAR, INC., Plaintiff,**

v.

**Michael WALLACE, Henry Wallace, Franz Fischer & Co. Knopffabrik and Josef Fischer, Defendants.**

**No. 86 Civ. 159 (RLC).**

United States District Court, S.D. New York.

Oct. 22, 1986.

Walter, Conston & Schurtman, P.C., New York City, for plaintiff; David B. Wolf, Gregory F. Hauser, of counsel.

Schulte, Roth & Zabel, New York City, for defendants; David M. Brodsky, E. Scott Gilbert, Donald L. Rosenthal, of counsel.

ROBERT L. CARTER, District Judge.

This diversity case, removed to this court from the New York State Supreme Court, involves various contract and business-related tort claims. Plaintiff Ronar, Inc. ("Ronar") is a New York corporation. Defendants are the West German company Franz Fischer & Co. Knopffabrik ("F & C"), its managing director Josef Fischer, and two British citizens, Henry and Michael Wallace, who are father and son.

After Ronar brought its original action in New York Supreme Court, F & C commenced a declaratory judgment proceeding in a West German court pertaining to the contractual obligations of Ronar and itself.

F & C and Josef Fischer now move to dismiss the action here for improper venue. Henry Wallace moves to dismiss for lack of personal jurisdiction. And his son Michael moves to stay litigation against him in this court pending the outcome of the West German proceedings.[1]

## BACKGROUND

The parties in this case deal in buttons. In mid–1980, Ronar and F & C entered into a written agreement under which F & C would manufacture buttons in West Germany and Ronar would distribute them in the United States and Canada. The contract was effective through December 31, 1981, and renewable automatically from

---

1. The Wallaces also move for protective orders pending the resolution of their principal motions. As the principal motions are resolved herein, the propriety of such orders is moot and need not be addressed.

The court similarly need not address an additional motion by F & C and Josef Fischer to dismiss a fraud count for failure to plead with particularity, because Ronar has dropped the count upon amending its complaint.

year to year but terminable upon three months notice.

The contract remained in effect when in mid–1982, Michael Wallace emigrated from the United Kingdom to New York to work as manager and assistant to the president at Ronar. In this position of responsibility, Michael Wallace became familiar with Ronar's marketing practices.

During the fall of 1985, however, events turned sour. F & C notified Ronar in September that their contract would not be renewed effective January 1, 1986. Ronar terminated its employment of Michael Wallace in October, 1985. In December, 1985 Michael Wallace and F & C formed a new company, Fischer Wallace Corporation ("FW Corp."), for the manufacture and distribution of buttons in North America.

The circumstances surrounding these events are largely in dispute. Plaintiff contends that behind its back defendants were scheming to cut off their dealings with Ronar and do business together. For over a year, according to plaintiff, defendants planned their entry into the North American button market, taking advantage of Michael Wallace's insider knowledge of Ronar's sales network.

In its amended complaint, Ronar now charges F & C and Josef Fischer with inducing Michael Wallace to breach his employment contract. It charges Michael Wallace with both breach of the employment contract and three torts leading to the Ronar-Fischer break up: defamation, breach of fiduciary duties, and interference with prospective contractual relations.

Plaintiff also charges Henry Wallace with inducing his son's breach of contract and interfering with prospective (Ronar-Fischer) contractual relations. In connection with its charges against Henry Wallace, Ronar alleges that the elder Wallace helped finance and negotiate. the formation of FW Corp., and expects to receive (or is receiving) income from it. Finally, Ronar charges all defendants with unfair competition.

Defendants paint a different picture. F & C chose not to renew its contract with Ronar, say defendants, because it was displeased with Ronar's performance and wanted to form its own business for manufacturing and distributing buttons in the United States. Michael Wallace became dissatisfied when he did not get the responsibility at Ronar that he was promised and he became anxious that Ronar's financial condition was poor. And F & C and Michael Wallace formed FW Corp. because of their disappointment with Ronar, their interest in manufacturing buttons here, and Ronar's expressed lack of interest in joining their venture.

In the meantime, according to defendants, Henry Wallace did not join his son and F & C in negotiations but merely relayed messages between them. He has not participated in the management or financing of FW Corp., and he derives no revenue from it, although he gave Michael $35,000 as a gift that his son could invest in the new business. Rather, the elder Wallace sold his own business in 1982 and, except for consulting work through 1985, he is retired. He resides in Florida and owns no property in New York.

## DISCUSSION

### A. Forum-Selection Clause

Defendants Josef Fischer and F & C move to dismiss the counts against them on the ground that a forum-selection provision in their contract with Ronar confers venue exclusively upon a court in West Germany.

Defendants have translated the provision from the German, without challenge by plaintiff, as follows: "The courts at Tirschenreuth, Federal Republic of Germany, shall have jurisdiction and venue." Affidavit of Peter Feuerle at 4, ¶ 8.[2]

■ Interpretation of this clause, like that of any other contract provision, begins in familiar territory. The court's goal is to honor the legitimate expectations of the parties to the contract. *See The Bremen v.*

**2.** The German version reads, "Gerichtsstand ist    Tirschenreuth—BRD." *Id.* at 2, ¶ 8.

*Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972). To do so the court generally must enforce the specific terms that the parties have chosen because those terms reflect the agreement they have freely reached. *See id.* To be sure, courts are not always bound by contractual language. Most notably, the terms of an agreement are not enforceable when evidence of "fraud, undue influence, or overweening bargaining power" undercuts the premise that the agreement was freely negotiated. *Id.* But absent a "strong showing" of such impinging circumstances, or some other reason why enforcement would be "unreasonable and unjust," a forum-selection clause is controlling. *Id.* at 15, 92 S.Ct. at 1916; *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, ——, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985) (freely negotiated forum-selection clause enjoys a "strong presumption in favor of enforcement").

■ Ronar does not allege that fraud, undue influence, or overweening bargaining power subverted the parties' free negotiation. Instead it argues simply that enforcement of their agreement would be unfair, unjust, or unreasonable. Ronar explains that it might have difficulty getting personal jurisdiction over the British defendants in West Germany, pretrial discovery would be restricted in a West German proceeding, and many of the parties and prospective witnesses reside in the United States rather than West Germany.

These questions of convenience are hardly different from the ones the Supreme Court considered in *The Bremen,* which like this case involved a dispute between a German corporation and an American one. The Court noted that the inconvenience the plaintiff might suffer by being held to its bargain clearly could have been foreseen, *The Bremen, supra,* 407 U.S. at 17–18, 92 S.Ct. at 1917–18, and in order to escape the forum-selection provision on the ground that enforcement would be unjust and unreasonable, the American party would have to sustain the heavy burden of showing

that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18–19, 92 S.Ct. at 1917–18.

None of the possible sources of inconvenience mentioned by Ronar strikes the court as grave. *See, e.g., Clinton v. Janger,* 583 F.Supp. 284, 288 (N.D.Ill.1984) (plaintiff's inconvenience in suing in multiple forums because one forum does not assert jurisdiction over all defendants is not unreasonable); *Karlberg European Tanspa, Inc. v. JK–Josef Kratz Vertriebsgesellschaft mbH,* 618 F.Supp. 344, 348 (N.D.Ill.1985) (neither the restricted scope of discovery in West Germany, nor the fact that most of the witnesses reside in the United States rather than West Germany, is an unreasonable inconvenience). Each inconvenience was foreseeable when the parties agreed to the West German forum. In fact, the court assumes that because Ronar freely entered the agreement, it not only was aware of the potential disadvantages of the German forum but received consideration for them as part of the bargain. *See Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.,* 466 F.Supp. 71, 73 (S.D.N.Y.1978) (Pierce, J.). Judge Friendly's warning applies here: "There can be nothing 'unreasonable and unjust' in enforcing such an agreement; what would be unreasonable and unjust would be to allow one of the [parties] to disregard it." *AVC Nederland B.V. v. Atrium Investment Partnership,* 740 F.2d 148, 156 (2d Cir.1984) (footnote omitted), *quoted in Luce v. Edelstein,* 802 F.2d 49, 57 (2d Cir.1986), *aff'g in pertinent part and rev'g in part on other grounds,* No. 85 Civ. 4064 (S.D.N.Y. Aug. 7, 1985) (Carter, J.).

■ Plaintiff also objects that in agreeing to the forum-selection clause, its president, Alfred Feiler, was thinking only of contract actions and never intended that the clause should apply to tort actions as well. If any tort claim is to come within the coverage of the clause, Ronar now argues, it must be a contract claim that is disguised or alternatively pleaded as a tort.

Both sides argue at length about "some rather nice distinctions" concerning the scope of forum-selection provisions. *See AVC Nederland B.V., supra,* 740 F.2d at 155.

However, the terms the parties chose are very simple and very broad. Thus, nuance provides no additional illumination. That a West German court "shall have jurisdiction and venue" raises no distinction between contract and tort. It confers jurisdiction and venue over all litigation arising between the parties in the course of their dealings. *See Luce v. Edelstein, supra,* 802 F.2d 49, 56–57 & n. 4 (provision that "the parties hereby confer exclusive jurisdiction in any [action or proceeding arising out of this Agreement or any breach thereof] upon the Supreme Court of the State of New York, County of New York" applies to state and common law fraud, breach of fiduciary duty, breach of contract, and securities fraud); *Hoes of America, Inc. v. Hoes,* 493 F.Supp. 1205, 1207 (C.D.Ill.1979) ("Any court procedures shall be held in Bremen [West Germany]" covers claims including interference with contractual relations, inducement of breach of contract, and unfair competition).

Ronar argues, however, that under West German law the forum-selection clause is inapplicable to the tort claims in this case. The relevance of this argument is questionable as it would appear that federal rather than West German law controls the court's reading of the scope, as well as the validity, of the forum-selection clause. *See Gaskin v. Stumm Handel GmbH,* 390 F.Supp. 361, 363 (S.D.N.Y.1975) (Cannella, J.) (enforcing a provision selecting a West German forum in accordance with federal law); *cf. Benge v. Software Galeria, Inc.,* 608 F.Supp. 601, 606–07 (E.D.Mo.1985) (federal rather than state law governs forum-selection clauses in diversity actions). Admittedly, as this court has previously recognized, the question of which law to apply to a forum-selection clause in a diversity case

is a complex one. *Cruise v. Castleton, Inc.,* 449 F.Supp. 564, 568 (S.D.N.Y.1978) (Carter, J.). But in the context of international commerce, there is much to be said for a uniform federal approach to procedural matters including venue if the court is efficaciously to "exercis[e] its jurisdiction to ... give effect to the legitimate expectations of the parties," *The Bremen, supra,* 407 U.S. at 12, 92 S.Ct. at 1914. *See Gaskin, supra,* 390 F.Supp. at 363 (applying federal law); *see also Mitsubishi Motors Corp., supra,* 473 U.S. at ——, 105 S.Ct. at 3355 (stressing "sensitivity to the need of the international commercial system for predictability in the resolution of disputes"); *Hoes of America, Inc., supra,* 493 F.Supp. at 1207 ("It is difficult to decide an interpretation of the law of a foreign country in which the legal system is different [*i.e.,* civil law as opposed to common law]."). *But cf. General Engineering Corp. v. Martin Marietta Alumina, Inc.,* 783 F.2d 352, 357 (3d Cir.1986) (discerning no strong federal interest to displace state law in suit between two Virgin Islands corporations); *AVC Nederland B.V., supra,* 740 F.2d at 155 (in a securities fraud action, "the interpretation of a forum-selection and choice-of-law clause in a contract executed in the Netherlands among Dutch nationals and a Georgia partnership composed of Dutchmen will require the application of Dutch law to words in the Dutch language").

Nevertheless, this difficult question is not squarely before the court and need not now be finally resolved. Two considerations lead the court to settle the issue of the applicability of West German law on a narrower ground. First, one court has ruled that under West German law the clause, "All court procedures shall be held in Bremen [West Germany]," extends to tort actions such as inducement of breach of contract and unfair competition. *Hoes of America, Inc., supra,* 493 F.Supp. at 1207–08.[3] The forum-selection clause in

---

3. The *Hoes* court is apparently the only one thus far to assume that West German law is applicable to the interpretation of a forum clause. *Cf.*

*Karlberg European Tanspa, supra,* 618 F.Supp. at 347 & n. 2 (assuming "for the purposes of this motion" the correctness of the *Hoes* court's in-

this case is not materially different than the one in *Hoes,* and plaintiff has cited no case, American or West German, that would suggest a subsequent change in West German law.

Second, and more importantly, Ronar's interpretation of West German law, if taken at its word, would render the forum-selection clause self-contradictory. Ronar argues that a forum-selection agreement is invalid under West German law except insofar as it explicitly refers to a particular legal relationship. "Thus," according to Ronar, "a forum selection clause governing all claims between the parties in invalid." Plaintiff's Memorandum of Law at 25 (citation omitted). But the forum provision in this case plainly does purport to govern all claims between the parties in terms broad enough that *no* particular legal relationship is mentioned. If Ronar is correct, then, the provision was invalid from the start. Such a result would "frustrate the purpose of the parties as it is clearly set forth in the agreement" and therefore is impermissible. *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 722 (2d Cir. 1982). To the extent that plaintiff is correct in arguing that West German law compels that result, the court must assume that West German law was not intended to and does not govern the forum provision in this case.

Thus, based on applicable principles of federal law set forth above, plaintiff's causes of action against F & C and Josef

Fischer must be dismissed for lack of venue.

## B. Personal Jurisdiction

Henry Wallace moves to dismiss on the ground that this court lacks *in personam* jurisdiction over him.

If plaintiff is to survive the motion to dismiss, it must sustain its burden of making a *prima facie* case of jurisdiction, supported by "definite evidentiary facts," over Wallace, a non-domiciliary of New York. *See Singer v. Bell,* 585 F.Supp. 300, 303 (S.D.N.Y.1984) (Weinfeld, J.); *Security National Bank v. Ubex Corp.,* 404 F.Supp. 471, 475 n. 9 (S.D.N.Y.1975) (Carter, J.); *Cato Show Printing Co. v. Lee,* 84 A.D.2d 947, 446 N.Y.S.2d 710, 712 (4th Dep't 1981). State law controls the issue of personal jurisdiction. *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983).

Ronar accordingly premises its claim of jurisdiction over Wallace on the New York "Long-Arm Statute," CPLR § 302(a).[4] Ronar advances four theories for establishing jurisdiction under section 302(a), tracking several of the statute's provisions.

The first three theories deserve little discussion: that Wallace transacted business in New York through an agent; that he committed a tort in New York through an agent; or that he committed a tort elsewhere which injured Ronar in New York, and through an agent he regularly does business and derives revenue in New York. *See* CPLR §§ 302(a)(1), 302(a)(2), 302(a)(3)(i).

---

terpretation of West German law, but determining the validity of the forum clause under federal law).

**4.** Section 302(a) provides in pertinent part:

*Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

CPLR § 302(a).

Each of the three theories obviously depends on an agency relationship, formal or informal, between Wallace and someone in the state of New York.[5] Thus, if plaintiff is to establish jurisdiction under any one of these theories, it must proffer not bland assertions, but specific facts that show agency. *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93–94 (2d Cir.1975); *Singer v. Bell, supra*, 585 F.Supp. at 302–03. Ronar must show that Wallace's agent took action in New York with his knowledge and consent and for his benefit and that Wallace exercised some control over the agent. *See Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir.1981); *Morse Typewriter Co. v. Samanda Office Communications Ltd.*, 629 F.Supp. 1150, 1155 (S.D.N.Y.1986) (Weinfeld, J.).

■ Ronar asserts that with Wallace's knowledge and consent and for his economic benefit two putative agents—Michael Wallace and FW Corp.—engaged in various activities in New York. However, the factual support it provides for this assertion is self-contradictory. *Compare* Plaintiff's Memorandum of Law at 31 (Henry Wallace "*is due* to receive economic benefits from [FW Corp.]" [emphasis added]), *with* Affidavit of Alfred W. Feiler at 8, ¶ 23 ("he *has been* deriving revenue from Fischer Wallace Corporation's activities in New York" [emphasis added]). This sort of discrepancy is symptomatic of how bland and loosely anchored Ronar's allegations of agency are.

Moreover, even if Ronar had made an appropriate factual showing that Henry Wallace knowingly benefitted from someone's actions in this state, it did not so much as hint at any fact from which the court might infer Wallace's exercise of control over any person, an indispensable element in establishing agency. A shareholder, for example, may receive profits from a corporation, but unless plaintiff establishes that the corporation's acts are not autonomous and that the shareholder somehow exerts control, no agency relationship is to be inferred. *Morse Typewriter Co., supra*, 629 F.Supp. at 1156. Ronar has made no such showing here.

Ronar's fourth theory for establishing jurisdiction is that Henry Wallace (1) committed a tort outside of New York, (2) causing injury to Ronar within the state, (3) that he expected his act to have consequences in New York, and (4) that he derived substantial revenue from international commerce. *See* § 302(a)(3)(ii), NYCPLR. Each of the four elements is essential. *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 310 (S.D.N.Y.1983) (Weinfeld, J.). Thus, if the court finds that plaintiff has failed to make an adequate showing of substantial revenue, it need not reach the first three elements. *See id.*

■ Whether revenue is "substantial" under New York law is determined on both relative and absolute scales. *See Vecchio v. S & T Manufacturing Co.*, 601 F.Supp. 55, 57 (E.D.N.Y.1984); *Allen v. Canadian General Electric Co.*, 65 A.D.2d 39, 410 N.Y.S.2d 707, 708–09 (3d Dep't 1978), *aff'd mem.*, 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 (1980). New York courts have analyzed defendants' revenues from interstate or international commerce as percentages of their total revenues. *See, e.g., Allen v. Auto Specialties Manufacturing Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3d Dep't 1974). More recent cases have turned to the amount of interstate or international revenues as an absolute number for a more appropriate measure. *See Vecchio, supra*, 601 F.Supp. at 58; *Allen v. Canadian General Electric Co., supra*, 65 A.D.2d 39, 410 N.Y.S.2d at 709. Neither approach is binding on the

---

5. Plaintiff's memorandum of law occasionally refers to a "conspiracy" between Henry Wallace and others. To the extent that plaintiff intends the references to convey anything more substantive than argumentative flourishes, the court disregards them as no conspiracy is alleged in the amended complaint and no fact is alleged anywhere to support a conspiracy charge. *See Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93–94 (2d Cir.1975); *Grosser v. Commodity Exchange, Inc.*, 639 F.Supp. 1293, 1308–09 (S.D.N.Y.1986) (Lasker, J.).

court, as "each case must be decided on its own facts." *Id.* (emphasis suppressed) (quoting *Chunky Corp. v. Blumenthal Brothers Chocolate Co.,* 299 F.Supp. 110, 115 (S.D.N.Y.1969) (Mansfield, J.)). And among the most important facts of each case are the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums. *See Trafalgar Capital Corp., supra,* 555 F.Supp. at 310; *Path Instruments International Corp. v. Asahi Optical Co.,* 312 F.Supp. 805, 810 (S.D.N.Y.1970) (Mansfield, J.); *Gillmore v. J.S. Inskip, Inc.,* 54 Misc.2d 218, 282 N.Y.S.2d 127, 135 (Sup.Ct.Nassau Cty.1967).

According to defendants, Henry Wallace is now fully retired. From 1982 through 1985 he received yearly remuneration of 4,000 British pounds or approximately $6,500 for consulting services rendered to the British company that until 1982 he owned. Ronar urges that this annual consulting fee is substantial revenue from international commerce. The court assumes that the consulting fees may properly count as Mr. Wallace's revenue, as he was receiving the fees only shortly before the time he allegedly committed the torts in this case.

However, it is difficult as a matter of common sense to take seriously Ronar's suggestion that $6,500 per year is substantial revenue. *See Vecchio, supra,* 601 F.Supp. at 58 ($7,400 found insufficient to constitute *prima facie* evidence of substantial revenue); *Path Instruments International Corp., supra,* 312 F.Supp. at 809 (in absolute terms, $85,021.45 would not seem to be substantial revenue). The facts surrounding this case bear out this common sense view. Henry Wallace's "business" at this point consists of the intermittent personal services of an individual near retirement residing with his wife in Florida. Wallace is neither a large corporation engaged in millions of dollars of commerce between states and countries, *cf. Path Instruments International Corp., supra,* 312 F.Supp. at 809; *Allen v. Canadian General Electric Co., supra,* 65 A.D.2d 39, 410 N.Y.S.2d at 709, nor, for that matter, a small corporation, *cf. Path Instruments International Corp., supra,* 312 F.Supp. at 810 (defendant corporation's "small size may render it a marginal case"). As an individual near retirement with $6,500 of annual income from international commerce, Mr. Wallace is not among the entities that can, consistently with the requirements of fundamental fairness, be called upon to bear the expense and inconvenience of litigating in distant forums. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *cf. Path Instruments International Corp., supra,* 312 F.Supp. at 809–10.

■ It is true that by Mr. Wallace's own estimate his $6,500 consulting fees constituted approximately 20% of his total yearly income. New York courts have in some cases held that considerably less than 20% of total gross or net revenue may be substantial. *See Nichols v. Surgitool, Inc.,* 419 F.Supp. 58, 62 (W.D.N.Y.1976); *Darienzo v. Wise Shoe Stores, Inc.,* 74 A.D.2d 342, 427 N.Y.S.2d 831, 833 (2d Dep't 1980). But this court resists a mechanical approach to an issue that implicates due process concerns. A child who earns a few dollars by trading foreign postage stamps may derive 100% of his income from international commerce. Yet his revenue is hardly "substantial" if the term is to have any practical or constitutional significance. As a prerequisite of personal jurisdiction, the term is significant both practically and constitutionally, and this court adjudges Mr. Wallace's consulting fees insubstantial.

■ Finally, plaintiff requests that failing its demonstration of personal jurisdiction over Henry Wallace, it be permitted discovery or an evidentiary hearing on the issue. Whether to permit either of these procedures or to resolve the jurisdictional issue on the basis of affidavits alone is for this court to decide. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). Discovery procedures are appropriate only when there is at least some slight factual indication that a basis for

jurisdiction exists. *D.B. Trade International, Inc. v. M/V Anthemios*, No. 83 Civ. 5775, slip op. at 4 (S.D.N.Y. Mar. 19, 1984) (Carter, J.) [Available on WESTLAW, DCTU database]; *see Singer v. Bell, supra*, 585 F.Supp. at 304 ("The discovery rules 'are not a hunting license to conjure up a claim that does not exist.' ") (quoting *Samuels v. Eleonara Beheer, B.V.*, 500 F.Supp. 1357, 1362 (S.D.N.Y.1980) (Weinfeld, J.), *aff'd*, 661 F.2d 907 (2d Cir.1981)). Ronar has alleged nothing whatsoever to indicate either that Henry Wallace exercised the element of control on which agency depends or that he derived substantial revenue from interstate or international commerce. *See Lehigh Valley Industries, Inc., supra* 527 F.2d at 93–94. To allow discovery or an evidentiary hearing under these circumstances would be an unfair infringement of the liberty of a man not even arguably subject to the jurisdiction of this court. *See id.; Grosser v. Commodity Exchange, Inc.*, 639 F.Supp. 1293, 1312 (S.D.N.Y.1986) (Lasker, J.) (quoting *Socialist Workers Party v. Attorney General*, 375 F.Supp. 318, 325 (S.D.N.Y.1974) (Griesa, J.)). Ronar's request is denied.

■ As plaintiff has failed to make a *prima facie* showing of personal jurisdiction over Henry Wallace, the court's assertion of jurisdiction now would violate the requirements of due process. *See World-Wide Volkswagen Corp., supra*, 444 U.S. at 291, 100 S.Ct. at 564. Henry Wallace's motion to dismiss is accordingly granted.

### C. Abstention

Michael Wallace moves to stay Ronar's action against him in this court pending the resolution of F & C's declaratory judgment proceeding in West Germany.

■ This court has inherent power to do what Wallace asks. *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936). Whether the court should exercise its power is, however,

a separate matter. Numerous factors bear on the propriety of staying litigation while a foreign proceeding is pending. They include pragmatic concerns such as the promotion of judicial efficiency and the related questions of whether the two actions have parties and issues in common and whether the alternative forum is likely to render a prompt disposition. *Continental Time Corp. v. Swiss Credit Bank*, 543 F.Supp. 408, 410 (S.D.N.Y.1982) (Lasker, J.); *I.J.A., Inc. v. Marine Holdings, Ltd.*, 524 F.Supp. 197, 198 (E.D.Pa.1981). Also relevant are considerations of fairness to all parties or possible prejudice to any of them. *See Continental Time Corp., supra*, 543 F.Supp. at 410; *I.J.A., Inc., supra*, 524 F.Supp. at 198. A third group of concerns relates to comity between nations. *See generally Cunard Steamship Co. v. Salen Reefer Services AB*, 773 F.2d 452, 456–60 (2d Cir.1985). When as in this case the foreign action is pending rather than decided, comity counsels that priority generally goes to the suit first filed. *See Brinco Mining Ltd. v. Federal Insurance Co.*, 552 F.Supp. 1233, 1240–42 (D.D.C.1982); *Continental Time Corp., supra*, 543 F.Supp. at 410; *see also Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202 (2d Cir. 1970).

■ If any court is to abstain based on the circumstances of this case, it should be the West German court rather than this one.[6] Ronar's action in this court was the first to be filed, raising the presumption that it should go forth immediately whether or not the West German proceeding does. *See Brinco Mining Ltd., supra*, 552 F.Supp. at 1241; *Continental Time Corp., supra*, 543 F.Supp. at 410.

Moreover, although Michael Wallace has moved to stay litigation here, he might well be prejudiced by this court's agreement to do so: As he is not a party to the West German proceeding, he will not have the

---

**6.** This is not to imply that the court thinks it appropriate to enjoin F & C from prosecuting its declaratory judgment action in West Germany. Although the court would have the power to do so, assuming at least that F & C was subject to its jurisdiction, it is not clear that such a disruption of a co-equal sovereign's jurisdiction is justified in this case. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926 & n. 47, 927 & nn. 49–51 (D.C.Cir.1984).

opportunity to offer evidence and cross-examine witnesses there on issues which he urges are relevant here. *See Landis v. North American Co., supra,* 299 U.S. at 255, 57 S.Ct. at 166 ("Only in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.").

Conversely, although this court *may* accept the West German court's view on certain issues to the prejudice of Wallace, it is not strictly bound by anything that court decides. For although as a matter of comity this court would owe deference to a West German judgment, *but cf. Clarkson Co. v. Shaheen,* 544 F.2d 624, 629–30 (2d Cir.1976) (recognition of a foreign judgment is most appropriate when alien jurisdiction is "a sister common law jurisdiction with procedures akin to our own"), the parties to the two actions are not identical and the claims, though partially dependent on certain common factual issues, are ultimately distinct. In a word, the delay and expense of awaiting a decision from West Germany might well be for naught. *See I.J.A., Inc., supra,* 524 F.Supp. at 198–99. And because the West German action is apparently still in its incipiency,[7] the delay and expense would most likely be substantial. *See id.* at 199 ("Where foreign litigation is in its incipiency, motions to stay the domestic action are properly denied."). Finally, to be frank, Wallace may well be engaged in forum·shopping by relying on co-defendants to favorably resolve certain issues for him in West Germany. Such a tactic is not to be condoned. *See Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952); *Brinco Mining Ltd., supra,* 552 F.Supp. at 1242.

The balance of factors as they apply to this case tip lopsidedly in favor of going forth with Ronar's action in this court.

Michael Wallace's motion for a stay is therefore denied.

IT IS SO ORDERED.

---

7. As of the submission of papers on this motion, Ronar had not even been served with process as a defendant in the West German proceeding.

*See* Affidavit of James R. Maxeiner at 6–7, ¶¶ 14–17; Defendants' Reply Memorandum of Law at 32 n. **.