Mamo J. Camello, J.
In this action to recover damages for personal injuries and for breach of warranty, defendant moves to dismiss the complaint on the following grounds: (1) res judicata; (2) Statute of Limitations and (3) lack of personal jurisdiction. (CPLR 3211, subd. [a], pars. 5, 8.)
The action arises out of an accident which occurred on September 26, 1962. Plaintiff, while in the employ of Chain Bike Corp. at its Queens plant, was preparing to use certain oxyacetylene welding equipment when the oxygen pressure regulator and high pressure gauge exploded causing plaintiff to lose the use of one eye, partial loss of the use of the other, as well as facial disfigurement. The components which exploded were manufactured and designed by the defendant, an Ohio corporation. The oxygen pressure reducing system was sold by defendant to Harris Calorific Sales, Inc., a New Jersey corporation, which in turn sold it to Even Supply Corp., another New Jersey corporation, which then sold it to its New York affiliate, Harris-Ace Welding Equipment Co., Inc. The latter sold it to plaintiff’s employer.
An action was commenced on September 20, 1965 against the instant defendant in addition to others. The complaint against the defendant was dismissed for lack of personal jurisdiction by order dated May 9, 1966 which confirmed the report of the Special Referee of this court who found that the corporation was not doing business in this State within the meaning ,of Tauza v. Susquehanna Coal Co. (220 N. Y. 259) nor transacting any business in this State within the meaning of CPLR 302 (subd. [a], par. 1). Clearly, the alleged tortious act was not one committed within this State so that jurisdiction could be acquired by virtue of 'CPLR 302 (subd. [a], par. 2). (Feathers v. McLucas, 15 N Y 2d 443.) The instant action, commenced by service upon the defendant in Ohio on August 29, 1969, is designed to take advantage of the 1966 amendment to -CPLR 302, which permits the exercise of jurisdiction over a nondomiciliary where he commits :
‘ ‘ a tortious act without the state causing injury to person or property within the state * * * if he
“ (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial reve *289 nue from goods used or consumed or services rendered, in the state, or
“ (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ’ ’.
In dealing with defendant’s first contention, it should initially be noted that the amendment to CPLR 302 has been and should be given retroactive effect. (Newman v. Charles S. Nathan, Inc., 55 Misc 2d 368; Gillmore v. J. S. Inskip, Inc., 54 Misc 2d, 218; Vernon v. Roch-Ledge House, 49 Misc 2d 98; see 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.04.) As stated in Simonson v. International Bank (14 N Y 2d 281, 289, 290):
‘ ‘ Whether, and to what extent, such a procedural statute is to be accorded retroactive effect is normally a matter of ascertaining the legislative intent. Certain basic guidelines to that end are provided by our decisions. It is thus presumed, absent any contrary indication, that the Legislature intended ‘ Changes in the form of remedies ’, effected by a statute such as this, to be ‘ applicable to proceedings thereafter instituted for the redress of wrongs already done.’
*-y. -VTT w
“ No such ‘ clear expression ’ is to be found in the CPLR of a design by the Legislature to affect proceedings theretofore taken in a pending action. The Legislature has in CPLR 10003 stated that the 6 act shall apply to all actions * * * commenced ’ after its effective date. ’ ’
Thus the fact that service prior to the enactment of the amendment to CPLR 302 was set aside for lack of jurisdiction does not prevent new service after its effective date. (Newman v. Charles S. Nathan, Inc., supra; Vernon v. Roch-Ledge House, supra; see Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443, cert. den. 382 U. S. 905.)
Turning to defendant’s second contention, to wit, that the action is barred by the Statute of Limitations (CPLR 203, subd. [a]; 214, subd. 5), CPLR 207 provides for the tolling of the statute where a plaintiff is unable to obtain jurisdiction over the defendant. Thus, where a cause of action accrued against an absent defendant, the statute is tolled unless personal jurisdiction could be obtained over him without personal service of the summons within the State. (CPLR 207, subd. 3.) This provision is specifically geared to the “ long-arm” statute (CPLR 302). In the instant case, since prior to September 1, 1966 personal jurisdiction against the defendant could not be obtained, the Statute of Limitations was tolled. The action, *290 having been commenced within three years from that date, is timely. (Burris v. Alexander Mfg. Co., 51 Misc 2d 543; Ellis v. Newton Paper Co., 44 Misc 2d 134, revd. on other grounds 24 A D 2d 871.)
Finally, defendant contends that there is no basis for the exercise of personal jurisdiction either under CPLR 302 (subd. [a], par. 3, cl. [i]) since it does not derive substantial revenue from goods used in the State or under CPLR 302 (subd. [a], par. 3, cl. [ii]) since it did not expect nor reasonably could have expected the alleged tortious act to have consequences in this State. In Gillmore v. J. S. Inskip, Inc. (54 Misc 2d 218, supra), the court stated at page 221: 1 ‘ What constitutes 1 substantial revenue ’ under CPLR 302 (subd. [a], par. 3, els. [i] and [ii]) is not defined in the statute or in the Judicial ¡Conference Report (supra) (1966 McKinney’s Sess. Laws, pp. 2780, 2786-2790) or in the annotations to section 1.03 of the Uniform Interstate and International Procedure Act (9 B Uniform Laws Ann., p. 312) on which chapter 590 was based in part. Viewed in the context of the constitutional limitations discussed below, which required ‘ minimal contact ’ with the forum and proscribe the exercise of jurisdiction when it would be unfair to require a foreign defendant to come into the forum to defend, the phrase should, logically, be construed to require comparison of New York (or interstate or international) gross sales revenue with a defendant’s total gross sales revenue (cf. Kramer v. Vogl, 17 N Y 2d 27, 32) or New York, interstate or international net profits with a defendant’s total net profit, but there are cases which deal with the question of substantiality in terms of dollar volume of sales or profit in the abstract (see Singer v. Walker, 15 N Y 2d 443, 466; Johnson v. Equitable Life Assur. Soc., 22 A D 2d 138, 140, affd. on stipulation for jurisdiction 18 N Y 2d 933; Newman v. Charles S. Nathan, Inc., 46 Misc 2d 407, revd. on other grounds 24 A D 2d 867; Rietseh v. Societe Anonyme Des Automobiles Peugeot, 45 Misc 2d 274). ” A comparison of the New York gross sales to defendant’s total gross of approximately $2,000,000 for each of the years 1962, 1963 and 1964 reveals that New York sales amounted to approximately 1%. No figures have been submitted to indicate the present posture of the defendant’s resources. No determination need be made, however, as to whether the volume of New York .sales is sufficient to satisfy CPLR 302 (subd. [a], par. 3, cl. [i]) since it is the opinion of this court that personal jurisdiction attaches under CPLR 302 (subd. [a], par. 3, cl. [ii]). There is no merit to defendant’s contention that this subdivision does not apply *291 to breach of warranty actions. (See Blessington v. McCrory Stores Corp., 305 N. Y. 140; Mendel v. Pittsburgh Plate Glass Co., 25 N Y 2d 340; Gillmore v. J. S. Inskip, Inc., supra; contra Bertram & Son v. Janesville Apparel Co., N. Y. L. J., June 4, 1969, p. 34, col. 5.)
Defendant apparently derives substantial revenue from interstate and international commerce but denies, however, its expectation of forum consequences. It must be noted that there need be no connection between the tortious act and the deriving of substantial revenues from interstate or international commerce. Nor need the defendant foresee the specific injury-producing event within the State. (See 1 Weinstein-Korn-Miller, N. Y. ;Civ. Prac., par. 302.10a.) Defendant sold the oxygen pressure reducing system to Harris Calorific Sales, Inc., of New Jersey under an agreement pursuant to which the latter was designated the sole distributor of such units in the territory described in the agreement, which included the Boroughs of The Bronx, Manhattan, Richmond and the whole of Long Island. It is manifest that defendant should have foreseen forum consequences of its alleged tortious act.
Accordingly, the motion is denied;