LOUIS J. MURDOCK et al., Plaintiffs, v ARENSON INTERNATIONAL USA, INC., Defendant and Third-Party Plaintiff, et al., Third-Party Defendant.

ARENSON INTERNATIONAL, LTD., Fourth-Party Plaintiff-Respondent, v UNERMAN GREENMAN BERGER LIMITED, Fourth-Party Defendant-Appellant. (And Another Action.)

First Department, May 8, 1990

**APPEARANCES OF COUNSEL**

*Ronald J. Gizzi* of counsel *(Suzanne Chalpin* with him on

the brief; *LeBoeuf, Lamb, Leiby & MacRae,* attorneys), for fourth-party plaintiff-respondent.

*Michael D. Glatt* of counsel *(W. David Eddy, Jr.,* and *Cheryl P. Vollweiler* with him on the brief; *Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for fourth-party defendant-appellant.

### OPINION OF THE COURT

KASSAL, J.

 The issue presented is whether the courts of this State may, consistent with due process standards, assume in personam jurisdiction over Unerman Greenman Berger Limited, a nondomiciliary, second fourth-party defendant, pursuant to the long-arm statute, CPLR 302 (a). Upon evaluating the nature and degree of this defendant's over-all contacts with New York, we conclude that they may not.

On or about January 3, 1980, plaintiff Louis Murdock suffered a fall and sustained severe and permanent injuries when his swivel office chair broke. Murdock commenced an action against the domestic retailer of the chair, Arenson International USA, Inc. (USA), to recover damages for personal injuries, and his wife, plaintiff Barbara Murdock, asserted derivative claims. USA brought a third-party action against Murdock's employer, International Business Machines Corp. (IBM), alleging, *inter alia,* IBM's failure to take measures to prevent such accidents at its workplace. In addition, USA brought suit against Arenson International, Ltd. (AIL), the British designer and manufacturer of the chair. AIL, in turn, brought two fourth-party actions against distributors of component parts of the chair, fourth-party defendant, Suspa Verin U.K. Limited, and second fourth-party defendant, Unerman Greenman Berger Limited (UGBL).

The appeal before us concerns solely this latter, fourth-party defendant, UGBL, which challenges the denial of its motion to dismiss the fourth-party complaint against it for lack of in personam jurisdiction.

AIL's assertion of in personam jurisdiction over UGBL is grounded in paragraph (3) of the "long-arm" statute, CPLR 302 (a), which applies to a nondomiciliary who:

"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce".

■ Upon examination of this record, we conclude that these standards are not met, and that defendant's motion to dismiss should, accordingly, have been granted.

First, to establish that a defendant "does or solicits business" in New York, it must be shown that his "overall contact with New York is substantial enough to make it reasonable to subject him to jurisdiction and feasible for him to defend here." (Siegel, NY Prac § 88, at 103.) In the case before us, the defendant's contact with the State of New York was minimal. It is undisputed that UGBL, which is a British corporation whose principal place of business is in London, England, has never been registered, authorized or qualified to do business in this State, and that it does not maintain any personnel, bank accounts, real or personal property, sales offices, or agents in New York. Moreover, UGBL had no contact with any New York company concerning the chair component at issue. The subject component, which UGBL imported from a Norwegian corporation, was sold in England to AIL, another British corporation.

The due process standards by which the courts must be guided in determining whether a nonresident defendant is amenable to suit under a long-arm statute, have as their basis the fundamental requirement that the defendant have "minimum contacts" with the forum State, in order that the maintenance of the suit not "offend 'traditional notions of fair play and substantial justice' ". (*International Shoe Co. v Washington,* 326 US 310, 316, quoting *Milliken v Meyer,* 311 US 457, 463; *see also, Rush v Savchuk,* 444 US 320, 327; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286, 291.)

In accordance with these standards, the New York State Court of Appeals has observed that "[I]t was the purpose of CPLR 302 to extend the jurisdiction of our State courts to nonresidents who have 'engaged in some purposeful activity [here] * * * in connection with the matter in suit.' " *(Parke-Bernet Galleries v Franklyn,* 26 NY2d 13, 16, quoting *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443, 457.)

■ The record before us establishes that only .05% of UGBL's total sales, which percentage amounts to the sum of $9,000, were conducted with a furniture wholesaler located in

New York. Those transactions are unrelated to this litigation and, indeed, do not involve the particular chair part at issue here. This minimal business activity cannot be construed as rising to the level of "do[ing] or solicit[ing]" business in New York for the purpose of CPLR 302 (a) (3) (i). Nor, in light of the undisputed evidence of UGBL's minimum revenue from its New York sales, can this nondomiciliary be deemed to derive "substantial revenue" from its business dealings here. *(See, Allen v Auto Specialities Mfg. Co.,* 45 AD2d 331, 333; CPLR 302 [a] [3] [ii].)

■ Finally, the circumstances presented in this record do not support a finding that UGBL could reasonably have expected that its conduct would "have consequences in the state". (CPLR 302 [a] [3] [ii].) On this issue, the courts have adopted an "objective" test of foreseeability, pursuant to which it must be established that a reasonably prudent non-domiciliary should have expected the tortious act to have such consequences in New York. *(See, Fantis Foods v Standard Importing Co.,* 63 AD2d 52, *revd on other grounds* 49 NY2d 317.)* The mere likelihood that a product will find its way into the forum State is insufficient. *(Asahi Metal Indus. Co. v Superior Ct.,* 480 US 102.)

The foreseeability requirement also requires a showing that the defendant have some "purposeful affiliation" with the forum State. *(Martinez v American Std.,* 91 AD2d 652, 653, *affd* 60 NY2d 873.)* In short, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws". *(Hanson v Denckla,* 357 US 235, 253.)

For all of these reasons, we conclude that the due process standards which must be met in order to obtain in personam jurisdiction over fourth-party defendant are not present in the record before us, and the order, Supreme Court, New York County (Edward Greenfield, J.), entered April 12, 1989, which denied the motion of second fourth-party defendant, Unerman Greenman Berger Limited, to dismiss the fourth-party complaint against it for lack of in personam jurisdiction, CPLR 3211 (a) (8), and granted the motion of second fourth-party plaintiff for discovery pursuant to CPLR 3211 (d), should be reversed, on the law, the motion to dismiss granted and the motion for discovery denied as academic, with costs.

MURPHY, P. J., CARRO, ROSENBERGER and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on April 12, 1989, unanimously reversed, on the law, the motion to dismiss granted and the motion for discovery denied as academic. Second fourth-party defendant-appellant shall recover of the second fourth-party plaintiff-respondent $250 costs and disbursements of this appeal.