EUGENE IOVINE, INC., Plaintiff,

v.

**RUDOX ENGINE AND EQUIPMENT COMPANY, Defendant.**

**RUDOX ENGINE AND EQUIPMENT COMPANY, Third–Party Plaintiff,**

v.

**W.I. HORLICK COMPANY, INC., Third–Party Defendant.**

No. CV 91–2547.

United States District Court, E.D. New York.

March 16, 1992.

Goldberg & Connolly by Norman D. Alvy, Rockville Centre, N.Y., for plaintiff.

Van Nostrand & Martin by William C. Morrell, Amityville, N.Y., for defendant/third-party plaintiff.

Moss & Boris, P.C. by Neal D. Haber, New York City, for third-party defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced case, Eugene Iovine, Inc. ("Iovine"), the general contractor for the New York City Health and Hospital Corporation ("NYCH & HC"), brought suit against Rudox Engine and Equipment Company ("Rudox") for breach of warranty based on Rudox's contract with Iovine to supply twenty-six motor generator sets to upgrade the elevators at Kings County Hospital, located in Brooklyn, New York. Subsequently, Rudox commenced a third-party action against W.I. Horlick Company, Inc. ("Horlick"), the assembler and supplier of the twenty-six motor generator sets, for indemnity and contribution. Presently before the Court is Horlick's motion to dismiss for lack of *in personam* jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is denied.

## I. BACKGROUND

The following material facts are not in dispute. Iovine is a New York corporation having its principal place of business in East Farmingdale, New York; Rudox is a New Jersey corporation having its offices in Carlstadt, New Jersey; and Horlick is a Massachusetts corporation with offices in Boston and Randolph, Massachusetts.

On or about July 31, 1984, Rudox was awarded a $162,320 contract by Iovine to provide twenty-six motor generator sets for Kings County Hospital. On or about August 3, 1984, Rudox, from its New Jersey office, sent to Horlick, at its Massachusetts office, a purchase order for the motor generator sets.

Subsequently, Horlick forwarded submittals for the motor generator sets to Rudox for its review and approval.[1] These submittals were forwarded by Rudox to NYCH & HC which revised them in October, 1984 and then approved them on December 11, 1984. On or about October 21, 1985, Horlick notified Rudox that the motor generator sets were ready and four days later, Rudox, or its agent, picked them up from Horlick's Boston office.

This Court can properly assert personal jurisdiction over Horlick, a non-domiciliary of New York, only if Horlick has (a) purposely availed itself of the benefits of doing business in New York and; (b) has sufficient minimum contacts with New York so that it can reasonably expect to be called to defend itself in New York. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990); *PaineWebber Inc. v. Westgate Group Inc.*, 748 F.Supp. 115, 118 (S.D.N.Y.1990). Rudox cites the following

---

1. The submittals for the generators were provided Horlick by Kato Engineering Co., a Minnesota company retained by Horlick to design, assemble and manufacture them. The submittals for the motors were provided Horlick by Marathon Electric, a Wisconsin company retained by Horlick to design, assemble and manufacture them.

as constituting the required minimum contacts: (1) Horlick is listed under "Motor Generator Sets" in The Thomas Register, a "Yellow Pages" type of advertising directory that is published in New York and distributed throughout the world; (2) Horlick assembled three motor generator sets for a New York customer of Rudox in 1978 or 1979 (Horlick maintains that its work was performed only in Massachusetts); (3) in 1990, Horlick sent a bill to Unisys Corp., in New York, in relation to a diesel generator set that Horlick had purchased from Rudox for Unisys; (4) Horlick "reached out" beyond Massachusetts and negotiated a contract with Rudox in New Jersey; (5) Horlick knew that its submittals would be sent by Rudox to engineers of the NYCH & HC in New York in order to obtain final approval of the contract; (6) Horlick knew that the motor generator sets purchased by Rudox were destined for the Kings County Hospital in New York; (7) on September 28 and 29, 1989, Paul Horlick, then the president of Horlick, went to New York for, and actively participated in, two meetings with NYCH & HC to discuss alleged problems with the motor generator sets. (Horlick contends that there was only one meeting, it lasted only 30 minutes, and Paul Horlick did not say a word).

## II. DISCUSSION

■ In a third-party action, the district court must obtain personal jurisdiction over a third-party defendant before it can adjudicate the third-party claim. *Coleman v. American Export Isbrandtsen Lines, Inc.,* 405 F.2d 250, 251–52 (2d Cir.1968). This Court may assert personal jurisdiction over a non-resident in a diversity action only where a New York court would be able to assert such jurisdiction. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 901 (2d Cir.1981); *Rosenthal v. Warren,* 475 F.2d 438, 440 (2d Cir.), *cert. denied,* 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973). Consequently, this Court must look to New York's long-arm statute, CPLR §§ 301 and 302, to determine if personal

jurisdiction can be asserted against Horlick. *Pyramid Co. of Ithaca v. The Original Great American Chocolate Chip Cookie Co., Inc.,* 102 Misc.2d 1056, 425 N.Y.S.2d 230, 231–32 (Sup.Ct.1980).

A. *Legal Standard under CPLR § 302(a)(1)*

■ Rudox asserts that CPLR § 302(a)(1) confers this Court with jurisdiction over Horlick.[2] Section 302(a)(1) permits "a court [to] exercise jurisdiction over any non-domiciliary ... who ... transacts any business within the state or contracts anywhere to supply goods or services within the state." However, the claim against the non-domiciliary must arise from the same acts which form the basis for the allegation that the non-domiciliary is transacting business in New York. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 59 (2d Cir.1985); *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 764 (2d Cir.1983); *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981). Furthermore, the Court must determine whether the non-domiciliary has engaged in purposeful activity in New York, thereby invoking the benefits and protections of New York law. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *Hanson v. Denckla,* 357 U.S. 235, 250–52, 78 S.Ct. 1228, 1237–39, 2 L.Ed.2d 1283 (1958); *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 13, 209 N.E.2d 68, 71, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

■ Each case is unique and this Court must consider both the quantity and quality of Horlick's activities within New York that are related to the Rudox contract. *Fiedler v. First City Nat. Bank of Houston,* 807 F.2d 315, 317 (2d Cir.1986) (quoting *Sterling National Bank & Trust Co. of New York v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975)); *Longines–Wittnauer Watch Co.,* 261 N.Y.S.2d

---

2. Horlick does not maintain offices, employees or agents in New York. Rudox does not, and cannot, claim that Horlick is subject to jurisdiction under CPLR § 301 because its New York activities clearly do not rise to the level of "doing business."

at 19, 209 N.E.2d at 75. Moreover, proof of a single transaction in New York could satisfy the requirements of § 302(a)(1). *Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 339, 256 N.E.2d 506, 507 (1970) (citing authorities).

### B. *New York Activities Unrelated to the Instant Claim*

Although, as noted above, Rudox cites seven activities by Horlick that allegedly connect it to New York, Horlick argues that each of these activities is either unsubstantial, unrelated to the disputed contract, or completely unrelated to New York. Horlick is correct as to four of these seven activities.

■ Horlick's advertising in The Thomas Register, its assembly of three motor generator sets for Rudox and its billing of Unisys Corp. for a diesel generator are not related to the instant dispute and are therefore irrelevant to a claim for jurisdiction under § 302(a)(1). *See Hoffritz for Cutlery,* 763 F.2d at 59 (2d Cir.1985); *McGowan,* 437 N.Y.S.2d at 645, 419 N.E.2d at 323; *see also Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040 (S.D.N.Y.1987) (advertising in New York publications directed at national audience held insufficient for exercise of jurisdiction); *Murdock v. Arenson Intern. USA, Inc.,* 157 A.D.2d 110, 554 N.Y.S.2d 887, 889 (1st Dep't 1990) ($9,000 annual sales in New York, representing 0.05% of total sales, does not rise to level of doing or soliciting business); *Muollo v. Crestwood Village, Inc.,* 155 A.D.2d 420, 547 N.Y.S.2d 87 (2d Dep't 1989) (advertisement in New York newspaper and filing of prospectus with New York Attorney General held insufficient to establish jurisdiction).

■ Similarly, Rudox's allegation that Horlick "reached out" beyond Massachusetts to negotiate a contract with Rudox is not relevant to a § 302(a)(1) claim. *See Ferrante Equipment Company v. Lasker–Goldman,* 26 N.Y.2d 280, 309 N.Y.S.2d 913, 918, 258 N.E.2d 202, 205 (1970) ("mere

receipt by a non-resident of benefit or profit from a contract performed by others in New York is clearly not ... sufficient to confer jurisdiction"); *Spectra Products v. Indian River Citrus Specialties, Inc.,* 144 A.D.2d 832, 534 N.Y.S.2d 570, 572 (3rd Dep't 1988) (same).

### C. *New York Meeting Related to the Instant Claim*

In contrast, Rudox's assertion that Paul Horlick, then the president of Horlick, attended and actively participated in two days of meetings with representatives of NYCH & HC in New York in September, 1990 regarding the motor generator sets that are the subject of this litigation *could* satisfy the requirements of § 302(a)(1). Horlick argues that this New York meeting was insubstantial: it took place almost four years after the delivery of the motor generator sets, it lasted only 30 minutes, and Paul Horlick was silent throughout. Holick relies on *McKee Electric v. Rauland–Borg. Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967) (4–3 decision), in which the Court of Appeals held that a visit to New York for one day by the manager and sales representative of the non-domiciliary defendant in relation to alleged problems with its goods is an insufficient contact on which to base jurisdiction.[3] *Id.* at 37–38, 229 N.E.2d at 606–07. Furthermore, Horlick cites *Presidential Realty Corp. v. Michael Square West,* 44 N.Y.2d 672, 405 N.Y.S.2d 37, 38, 376 N.E.2d 198, 199 (1978), in which the Court of Appeals held that the plaintiff's allegations regarding a meeting in New York to modify a contract was insufficient to sustain jurisdiction in the absence of proof regarding the substance of that meeting.

*McKee Electric* and *Presidential Realty,* do not, however, negate the fact that the length and substance of the September 1990 meeting(s) may be highly relevant to whether this contact with New York is sufficient to establish jurisdiction. Indeed, the dismissal in *Presidential Realty* due to

---

**3.** In *McKee,* the defendant had also negotiated a one year distributorship agreement with the plaintiff some seven years earlier (the agreement was apparently renewed on an annual basis) and had shipped a substantial amount of goods into New York.

lack of proof regarding the substance of the New York meeting only emphasizes the potential importance of such evidence. *See CutCo Ind. v. Naughton*, 806 F.2d 361, 367–68 (2d Cir.1986) (two visits to New York for business discussions are sufficient for jurisdiction); *Hedlund v. Products from Sweden, Inc.*, 698 F.Supp. 1087 (S.D.N.Y.1988) (three New York business meetings are sufficient); *Xedit Corp. v. Harvel Ind. Corp., Fidelipac*, 456 F.Supp. 725, 728 (S.D.N.Y.1978) (single New York meeting is transaction of business); *Parke–Bernet Galleries*, 308 N.Y.S.2d at 339, 256 N.E.2d at 507 (single transaction can confer jurisdiction).

"[U]ntil an evidentiary hearing is held, [Rudox] need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists. [Moreover,] those documents are construed in the light most favorable to [Rudox] and all doubts are resolved in its favor." *CutCo Industries*, 806 F.2d at 365 (citations omitted). Accordingly, Horlick's motion to dismiss must be denied at this time.

### D. *Horlick Contracted to Supply Goods Destined for New York*

█ In addition, Rudox alleges that Horlick knew that the motor generator sets it sold to Rudox were for use at Kings County Hospital in New York. Indeed, Horlick submitted proposals to Rudox that Horlick knew would be passed on to NYCH & HC in order to get final approval for the contract. Therefore, Rudox argues, Horlick is subject to this Court's jurisdiction under § 302(a)(1) because it "contract[ed] to supply goods" within New York. The clause "contracts to supply goods or services within the state" was added to § 302(a)(1) in 1979 in order to extend long-arm jurisdiction to non-domiciliaries who made contracts outside New York with performance to take place in New York. McKinney's Cons.Laws of N.Y., Book 7B, C302:13 (1990); *Island Wholesale Wood Supplies, Inc. v. Blanchard Ind., Inc.*, 101 A.D.2d 878, 476 N.Y.S.2d 192, 194 (2d Dep't 1984).

Horlick argues that because its contract was with Rudox, a New Jersey corporation,

and the motor generator sets were picked up by Rudox in Massachusetts, it did not contract to supply goods or services within New York. Horlick relies on *Paradise Products Corp. v. Allmark Equipment Co., Inc.*, 138 A.D.2d 470, 526 N.Y.S.2d 119 (2d Dep't.1988). In *Paradise Products*, the president of the plaintiff, a New York corporation, traveled to New Jersey where he purchased a 500 gallon copper kettle from Carmel Equipment Co. ("Carmel"), a New Jersey corporation. In order to avoid a delivery charge, plaintiff arranged to have the kettle picked up and brought to New York. *Id.* 526 N.Y.S.2d at 120. The court affirmed Carmel's dismissal for lack of personal jurisdiction, holding that "[k]nowledge that a product may be destined for a particular forum is insufficient, in the context of this case, to sustain jurisdiction." *Id.* The Appellate Division noted that the sale of the kettle was Carmel's only purported contact with New York. Consequently, its "conduct and connections with New York are [not] such that it should reasonably have anticipated being haled into court here." *Id.* at 121 (citing *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); *see SBR Realty Corp. v. Pave-Mark Corp.*, 572 N.Y.S.2d 705, 707 (2d Dep't 1991) (same); *Finesurgic Inc. v. Davis*, 148 A.D.2d 414, 538 N.Y.S.2d 568, 569 (2d Dep't) (same), *appeal dismissed in part and denied in part*, 74 N.Y.2d 781, 545 N.Y.S.2d 101, 543 N.E.2d 744 (1989).

In contrast, in *Columbus McKinnon Corp. v. China Semiconductor Co., Inc.*, No. CIV–88–211E, 1989 WL 82455, at *2–3 (W.D.N.Y. July 19, 1990), plaintiff offered two affidavits showing that UMC, a Taiwanese manufacturer of computer chips, knew that chips it sold to another Taiwanese company to be incorporated into computer boards were destined to be shipped to New York. Under those facts, UMC was held subject to the district court's jurisdiction pursuant to the "contracts to supply goods" clause of § 302(a)(1). *Id.* at *4–5; *see Anderson Development Corp. v. Isoreg Corp.*, 154 A.D.2d 859, 546 N.Y.S.2d 720 (3rd Dep't 1989) (same).

It is difficult to reconcile cases like *Paradise Products* and *SBR Realty* with *Columbus McKinnon* and *Anderson Development* other than to state that a single contract to supply goods to New York satisfies the requirements of § 302(a)(1) but jurisdiction is proper only if, under the specific facts of the case, the requirements of the Due Process Clause are also satisfied. In *Asahi Metal Ind. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) the Supreme Court held that

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market of the forum State, for example, designing the product for the market in the forum State, advertising in the forum State. . . .

*Id.* at 112, 107 S.Ct. at 1032.

Accordingly, this Court holds that in the instant case, where Rudox alleges that Horlick not only knew that its motor generator sets, valued at $162,320, were destined for New York, but assisted in specially designing those sets and in procuring final approval of the contract by the NYCH & HC, Horlick has supplied goods for New York pursuant to CPLR § 302(a)(1) and has purposefully availed itself of the privilege of conducting activities in New York so as to satisfy the requirements of Due Process.

### III. CONCLUSION

Accordingly, for the aforementioned reasons, Horlick's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of *in personam* jurisdiction is denied.

SO ORDERED.