**Russell CATALFAMO, Plaintiff,**

v.

**JACOBSEN RACE CARS, INC.; Troy Evans; Ted Hughes; John Jacobsen; and Jacobsen Racing, Inc., Defendants.**

**No. 93–CV–1202.**

United States District Court, N.D. New York.

Oct. 24, 1994.

Delorenzo, Gordon, Pasquariello, Weiskopf & Harding, P.C., Schenectady, NY, for plaintiff (Joseph P. Eriole, of counsel).

Carter, Conboy, Case, Blackmore, Napierski & Maloney, P.C., Albany, NY, for defendant, Ted Hughes (William J. Greagan, of counsel).

Thorn & Gershon, Albany, NY, for defendants, Troy Evans and Jacobsen Race Cars, Inc. (Nancy Nicholson Bogan, of counsel).

Phelan, Burke & Scolamiero, Albany, NY, for defendant, John Jacobsen (John J. Phelan, III, of counsel).

## MEMORANDUM DECISION AND ORDER

HURD, United States Magistrate Judge.

This is a negligence action carrying diversity of citizenship and involving questions of long-arm jurisdiction. Defendants Jacobsen Race Cars, Inc. ("JRC, Inc.") and Troy Evans ("Evans"), have moved this court for summary judgment, or in the alternative, for a change of venue.

### FACTS

Former defendant Ted Hughes ("Hughes"), a resident of Nebraska, purchased a 1964 Corvette dragster in 1989 for his personal use. In an effort to obtain a new dragster, he decided to sell the dragster in 1992. He placed an ad in the classified section of *National Dragster,* a racing magazine, and was contacted in early 1993 by the plaintiff, a New York resident. Plaintiff agreed by telephone to purchase the car for $17,000.00, and wired $4000.00 to Hughes in Nebraska. The car was then delivered to plaintiff in South Bend, Indiana, on March 13, 1993, where the balance of the proceeds was paid. Less than two months later, while driving the dragster on May 2, 1993, in New York State, the plaintiff was involved in an accident, in which he sustained personal injuries and damage to the vehicle.

The remaining defendants are being sued for their involvement with design, construction, and maintenance work performed on the dragster prior to the sale from Hughes to plaintiff. It is alleged that JRC, Inc. and defendant Jacobsen Racing, Inc. (two separate corporations)[1] performed mechanical and design work on the car, and did so negligently. Evans, a resident of Nebraska, was employed by Jacobsen Racing, Inc. from December 1990 through May 1992, when he became president of JRC. Inc. Defendant John Jacobsen, also a resident of Nebraska, became president of Jacobsen Racing, Inc. in May 1992. Hughes had no employment relationship to either Jacobsen company, and all claims against him have been dismissed. Other than Hughes, none of the defendants had any direct contact with plaintiff.

JRC, Inc. was incorporated for the purpose of custom design and fabrication of race cars. It derived 80% of its business from outside Nebraska borders, and goods have

---

1. JRC, Inc. was originally incorporated under the name TPE, Inc. in April 1992, and changed its name in June 1992. Jacobsen Racing, Inc. has since changed its name to Omaha Sandblasting, Inc. Both are incorporated and have their principal place of business in Nebraska.

been shipped to nine states, including New York, in the regular course of business. However, JRC, Inc. has entered into only three transactions involving goods or services shipped to New York, in the four years preceding this action. The combined value of those three transactions totaled $1619.20. Finally, JRC, Inc. advertises in *National Dragster*, a nationally circulated magazine that includes New York in its circulation.

## PROCEDURAL HISTORY

Plaintiff originally commenced this action in Supreme Court, County of Schenectady, for personal injuries received in the May 2, 1993 automobile accident. On September 17, 1993, pursuant to 28 U.S.C. §§ 1441 and 1446, JRC, Inc. and Evans, served and filed a notice of removal to this court on the basis that complete diversity of citizenship exists between plaintiff (a resident of New York) and defendants (all residents or corporations of Nebraska); and that the amount in controversy exceeds $50,000. After the filing and service of an amended complaint and answers, JRC, Inc. and Evans moved to dismiss the (amended) complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, or in the alternative, to transfer to the District Court of Nebraska pursuant to 28 U.S.C. § 1404(a). Hughes moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that the court lacked personal jurisdiction over said defendant.[2] On March 2, 1994, both of these motions were denied without prejudice to renew after limited discovery had been conducted.

Hughes renewed his motion for summary judgment on June 14, 1994, which was granted on July 26, 1994. JRC, Inc. and Evans, likewise renewed their motion on June 15, 1994, this time bringing it in the form of a summary judgment motion. It is this motion upon which we now focus.

## JURISDICTION

JRC, Inc. and Evans, as citizens or corporations of Nebraska, may be subjected to jurisdiction of this court if elements of New York's long-arm statute are met. It is well settled that the District Court borrows the long-arm statute of the forum. Fed.R.Civ.P. 4(e); *Mellon Bank (EAST) PSFS, N.A. v. DiVeronica Bros., Inc.,* 983 F.2d 551 (3d Cir.1993); *Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir. 1972). Therefore, when determining the application of a state's long-arm statute in a diversity action, it is the state law on the issues of interpretation that is controlling. In this case, Civ.Pract.L. & R. § 302 is the New York State long-arm statute. The plaintiff argues that subdivisions (a)(3)(i) and (a)(3)(ii) of § 302, give him personal jurisdiction over the Nebraska defendants.

### Section 302(a)(3)(i).

The applicable provisions of Civ.Pract.L. & R. § 302 read as follows:

(a) **Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, ... who in person or through an agent:

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or ...

The Appellate Division, First Department clarified the factors § 302(a)(3)(i) seeks as contacts. The court stated, "[I]t must be shown that [defendants'] overall contact with New York is substantial enough to make it reasonable to subject him to jurisdiction and feasible for him to defend here." *Murdock v. Arenson Int'l. USA, Inc.,* 157 A.D.2d 110, 113, 554 N.Y.S.2d 887, 888 (1st Dep't 1990).

---

2. As far as the court can determine, Jacobsen Racing, Inc. has never been served or appeared in this action. John Jacobsen has appeared, but has never moved with regard to the (amended) complaint.

In the four years preceding this action, JRC, Inc. had three transactions involving New York, with a combined value of $1619.20. It has no employees, officers, real estate, assets, or bank accounts in New York. Such limited contacts standing alone clearly cannot be classified as "regular" or "persistent," or be seen as "deriv[ing] substantial revenue ... in the state." Civ.Pract.L. & R. § 302(a)(3)(i). Therefore, plaintiff asserts that JRC, Inc.'s continued solicitation in a nationally circulated magazine constitutes a persistent and regular contact within the state.

Looking at § 302(a)(3)(i) in terms of steps to be fulfilled, the plaintiff must show three separate factors: (1) that the defendant committed a tortious act outside New York,[3] (2) that the act caused injury within New York, and (3) that the defendant "regularly does or solicits business ... in the state." N.Y.Civ. Pract.L. & R. § 302(a)(3)(i); *see* Siegel, *New York Practice,* § 88 (1991). The first two are not disputed in this motion. The only remaining question is whether JRC, Inc.'s solicitation in a national magazine which circulates in New York, constitutes regular solicitation of business in New York, so as to satisfy this third factor of § 302(a)(3)(i).

To support the position that solicitation alone cannot confer jurisdiction defendants cite *Chamberlain v. Jiminy Peak,* 176 A.D.2d 1109, 1110, 575 N.Y.S.2d 410, 411 (3d Dep't 1991). However, *Chamberlain* focuses on a completely separate prong of New York's long-arm statute. To find minimum contacts under § 302(a)(1), the statute instills a requirement that the defendant transact business or supply goods or services in New York. Commentators have taken this to mean that the cause of action must have arisen from the transaction. Such a "genesis" is not required where jurisdiction is sought under § 302(a)(3)(i). *See* Joseph M. McLaughlin, Practice Commentaries, N.Y.Civ.Pract.L. & R. C302.21 (McKinney's, 1990). Rather, § 302(a)(3)(i) calls for the cause of action to arise from a tort adminis-

tered from without the state's boundaries and resulting in consequences within. Achieving this, the statute must then seek minimum contacts from an alternate source than the events or actions producing the claim.

Plaintiff attempts to show that JRC, Inc.'s solicitation adequately supplies those sought after contacts with New York. However, this attempt ultimately fails. For the advertisements do not reach the level of active or focused direction toward the New York market. The revenues derived from New York bear this point out. Furthermore, the courts cannot mandate that companies seek out only those avenues of advertisement that strictly adhere to state or regional borders, or else suffer the consequences of subjection to national jurisdiction. Companies do not control a magazine's circulation in the same sense that they do not control the airwaves of a radio station. Surely, a local Chicago business could not be hauled into a New York court for a local spot on Chicago's AM radio when the advertising reached New York on a clear night.

### Section 302(a)(3)(ii).

The Southern District reiterated the requirements for meeting § 302(a)(3)(ii), stating:

> To establish jurisdiction under this section, plaintiffs must show that (1) [defendant] committed a tort outside of New York, (2) causing injury to plaintiffs within the state, (3) that [defendant] expected its act to have consequences in New York, and (4) that it derive substantial resources from interstate or international commerce. Each of the four elements is essential, and if the court finds that the party seeking to establish jurisdiction has failed to make an adequate showing on one element, it need not reach the other three.

---

**3.** New York's Appellate Division, Third Department has stated that in order to satisfy this prong of the test, all that must be shown "is that the defendant was the author of acts without the State and that the complaint adequately frames a

cause of action in tort arising from those acts." *Evans v. Planned Parenthood of Broome County, Inc.,* 43 A.D.2d 996, 352 N.Y.S.2d 257, 259 (3d Dep't 1974).

*Monsanto Int'l Sales Co. v. Hanjin Container Lines,* 770 F.Supp. 832, 840 (S.D.N.Y. 1991).[4]

Again, for the purposes of this motion, the first and second elements have clearly been established. Defendants have admitted deriving 80% of their revenue from interstate commerce, thus satisfying the fourth element.[5] Only the third element, the JRC. Inc. and Evans's expectation of consequences, remains.

■ This foreseeability portion of the test carries the heavy burden of tying a defendant to New York for the purposes of due process. A defendant need not foresee the actual injury or the actual event that caused the injury. It is enough that a defendant knew that the product would end up in New York, and if defective, cause injury. Siegel, *New York Practice,* § 88 (citing *Gonzales v. Harris Calorific Co.,* 64 Misc.2d 287, 315 N.Y.S.2d 51 (Sup.Ct., Queens County, 1970), *aff'd* 35 A.D.2d 720, 315 N.Y.S.2d 815 (2d Dep't 1970)). The Supreme Court explained the foreseeability requirement that must be met for due process standards, when it handed down *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). There the Court explained:

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at 297, 100 S.Ct. at 567.

JRC. Inc. and Evans did not have any contract with plaintiff, nor did they know of the dragster's travels to this forum. They allegedly performed services on the drag racer of a Nebraska resident in Nebraska. It was the dragster's owner, Hughes, that in turn contracted with a known resident of New York, knowing that the car would be transported to that locale. Imputing this knowledge to the other defendants proves to be an insurmountable problem.

> The 'substantial connection,' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano County,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (citations omitted). Furthermore, while the Supreme Court in *Asahi* allowed that purposeful intent to serve a market could be shown with mere advertising in the forum state, a scattering of ads in a nationally circulated magazine and work on the Hughes dragster in Nebraska fails to show such an intent to reach New York's market.

Because the Statute of Limitations has not expired, the court will not exercise its discretion to transfer this case to the District Court of Nebraska. It shall be left to the plaintiff to decide whether he wishes to pursue his claims in the Federal or State courts of Nebraska. The court will exercise its discretion to dismiss all claims against John Jacobsen and Jacobsen Racing, Inc. so if plaintiff elects to refile in Nebraska, all issues may be resolved in one forum.

Accordingly, it is

ORDERED that:

1. Defendants Troy Evans and Jacobsen Race Cars, Inc.'s, motion for summary judgment is granted without prejudice to bring an action in Nebraska; and

---

4. Note that the first two factors match the first two required in § 302(a)(3)(i).

Note as well that the fourth factor holds a lesser requirement than the final factor of § 302(a)(3)(i), in that it only requires a defendant to derive substantial resources from interstate or international commerce, and not directly from New York. However, this lesser requirement leaves a due process gap that must still be fulfilled. Thus the third factor, requiring a measure of foreseeability must be shown as well.

5. "Contrary to [defendants'] assertions, section 302(a)(3)(ii) does not require that the substantial revenue from international commerce be linked to New York or the United States." *Broadcasting Rights Int'l Corp. v. Societe Du Tour de France, S.A.R.L.,* 675 F.Supp. 1439, 1445 (S.D.N.Y.1987).

84

2. Claims against defendant John Jacobsen and named defendant Jacobsen Racing, Inc. are dismissed *sua sponte* in the interest of justice, and judicial economy, without prejudice to bring an action in Nebraska.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.